**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Sanjay Wadhwa**
**Wendy B. Tepperman**
**Pascale Guerrier**
**Amanda Rios**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-5473 (Guerrier)**
**Guerrierp@sec.gov**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**Frantz Simeon and**<br>**First Black Enterprises, Inc.,**<br><br>**Defendants.** | **COMPLAINT**<br><br>**21 Civ. _____ ( )**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Frantz Simeon ("Simeon") and First Black Enterprises, Inc. ("First Black Enterprises") (collectively, "Defendants"), alleges as follows:

## SUMMARY

1. From at least April 2019 through at least February 2021, Simeon, a convicted felon, and his wholly-owned entity, First Black Enterprises, engaged in a Ponzi-like offering fraud that raised at least $335,000 from approximately 13 investors, most of whom are members of the Haitian-American community in the New York City area.

2. Among other things, Simeon falsely promised prospective and existing investors a risk-free, insured investment opportunity with guaranteed returns in the form of monthly "interest" payments of 10% of the principal invested. Simeon also falsely told prospective and existing investors that investors could exit the investment at any time upon 30-days' notice for a full return of their principal.

3. To further the scheme, Simeon and First Black Enterprises deceived prospective investors into believing that Simeon was a successful businessman with decades of experience, and that First Black Enterprises was a revenue-generating business. In reality, Simeon misrepresented his business experience and track record, and knew that First Black Enterprises conducted little-or-no actual business or investment activities with investor funds and had no meaningful revenue stream.

4. Instead of using investors' monies for investment purposes, Simeon used new investor funds to pay monthly interest payments to them and earlier investors. Simeon also misappropriated investor funds to pay his personal and other expenses.

5. In or around the Fall of 2020, when Defendants no longer had funds to pay the monthly returns promised to existing investors due to the lack of any actual business or investment activities and their prior misuse of investor funds, Defendants ceased making most monthly interest payments and did not return investors' principal investments. Yet, Simeon and First Black Enterprises continued to mislead investors, soliciting and accepting new investor funds through at least February 2021. Many investors who put their trust in Simeon lost a significant portion of their principal investments.

**VIOLATIONS**

6. By virtue of the foregoing conduct and as alleged further in this Complaint, Defendants have violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §

77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

7. Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint, or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9. The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Simeon from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Defendants, directly and indirectly, have made use of the means or instrumentalities

of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

12. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendants may be found in, are inhabitants of, or transact business in the Eastern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Defendants' solicitation of investors, many of whom reside in this District.

## DEFENDANTS

13. **Simeon**, age 65, is a resident of Brooklyn, New York. He incorporated First Black Enterprises in 2018, and is the President and sole owner of First Black Enterprises. Simeon is also the sole signatory for its bank accounts. On or around July 21, 2011, Simeon was arrested and criminally charged by the New York State Office of the Attorney General for his participation in a criminal network that set up bogus nursing schools in New York City and Long Island. Simeon was the owner and Executive Director of one of the sham nursing schools, International Language and Professional Network, located in Brooklyn, New York, which, among other things, issued fraudulent certifications and transcripts to students. In or around 2012, Simeon pled guilty to Scheme to Defraud (a class E felony) and Conspiracy in the Fifth Degree (a class A misdemeanor), and was sentenced to 1 to 3 years in prison.

14. **First Black Enterprises** is a New York corporation with its principal place of business in New York, New York. First Black Enterprises had an office located in the Empire State Building during a significant part of the scheme.

## FACTS

### I. DEFENDANTS OFFERED AND SOLD SECURITIES INVESTMENTS

15. In approximately April 2019, Simeon began soliciting prospective investors, offering

them the opportunity to receive a 10% return each month on their invested principal that was guaranteed, safe, risk-free, and insured against losses. Simeon referred to the monthly 10% return as an "interest" payment.

16. Simeon told prospective investors that they could ask for a return of their principal at any time, and that the return request would be honored after a 30-day notice period.

17. Simeon presented himself to prospective investors as a successful immigrant businessman, telling them that he had decades of experience as a businessman and never had any problems with his business or lost money, not even during the 2008 financial crisis.

18. Simeon solicited several of the prospective investors by inviting them to First Black Enterprises' office in the Empire State Building.

19. Simeon enticed investors by showing them pictures of expensive houses, cars, and a yacht, all of which he claimed to own and which purportedly evidenced his success as a businessman. Simeon also showcased to some investors a picture of himself and former president Obama purportedly as further proof of his success.

20. Simeon also solicited prospective investors directly in person elsewhere, by telephone, and via text message.

21. Simeon did not explain to investors how he and First Black Enterprises generated the 10% monthly return on investment. When investors pressed for details of the investment strategy, Simeon told them he would not share the details because he did not want his investors to either copy his investment strategy, or cut him out of the investment altogether.

22. Simeon told prospective investors that their money could be used for many things, including real estate ventures, gold, and what Simeon termed "hot money."

23. Few, if any, of the prospective investors had prior investment experience.

24. In order to invest, Simeon directed investors to give him a personal check made out

to First Black Enterprises for their initial investment principal. Many of the checks that investors made out to First Black Enterprises to invest included the word "investment" in the check memo line.

25. Defendants did not provide, and investors did not sign, any documentation or agreement reflecting the terms of their investment.

26. Simeon told investors that the checks they provided to First Black Enterprises would serve as receipts for their investments as well as the monthly interest checks they would receive from First Black Enterprises. Most of the monthly checks that First Black Enterprise made out to investors included the word "interest" in the check memo line.

27. Investor funds were deposited into First Black Enterprises' primary bank account during the relevant period. Simeon pooled these funds together to pay investors their promised returns.

28. Simeon often solicited further investments from existing investors, often after the investor received their first monthly interest check from First Black Enterprises.

29. Simeon typically told investors that their investment was guaranteed, risk-free, and insured against losses and that they would also receive a 10% monthly return on any subsequent principal investments, such that the more they invested, the more money they would make.

30. Simeon also told investors if they successfully introduced a new investor to him, they could earn a commission that would be a percentage taken out of the new investor's monthly interest payment, so long as the new investor agreed to that arrangement.

31. Most of the investors are members of the Haitian-American community in the New York City area, several of whom know one another.

32. Approximately 13 investors invested with Defendants from at least April 2019 through at least February 2021.

33. Defendants raised at least $335,000 from investors.

34. First Black Enterprises conducted little-or-no actual business or investment activities with investor funds and had no meaningful revenue stream. Instead, Defendants made so-called interest payments totaling approximately $195,000 to investors using investor funds and diverted most of the remaining funds for Simeon's personal or other use.

## II. DEFENDANTS MADE MATERIAL MISREPRESENTATIONS AND OMISSIONS TO INVESTORS

35. Simeon, directly and on behalf of First Black Enterprises, made numerous materially false and/or misleading statements to investors.

36. Among other things, Simeon falsely:

a. told investors that he had decades of experience as a successful businessman and never had any problems with his business or lost money, while knowing, or at least recklessly disregarding, that he did not have any such experience, that he and First Black Enterprises had no prior profitable track record, and that it was materially misleading to omit his prior felony conviction for a scheme to defraud;

b. told investors they would receive a 10% return or "interest" each month on their invested principal while knowing, or at least recklessly disregarding, that the interest was not a "return" on investment but instead was funded by their and others' invested principal;

c. told investors that their investment was risk-free, safe and insured against losses while knowing, or at least recklessly disregarding, that the investments were not safe, risk-free and that no such insurance against losses existed;

d. guaranteed investors could receive a full refund of their principal with 30-days' notice, while knowing, or at least recklessly disregarding, that there

were insufficient funds to return investor principal; and

e. told investors that their investments would be used for investment purposes, which could include real estate ventures, gold investments, and "hot money," while knowing, or at least recklessly disregarding, that investor funds were not used for investment purposes.

37. Simeon and First Black Enterprises used such material misstatements and omissions to obtain investors' funds.

38. Simeon knew, or at least recklessly disregarded, that First Black Enterprises not only did not have the funds to pay the promised returns to investors or return investors' principal, but also that First Black Enterprises did not use investor funds to conduct any meaningful business, and therefore had no prospect of generating sufficient revenue to support their promises to investors.

39. During the relevant period, there was no meaningful business or investment activity reflected in First Black Enterprises' accounts. Simeon, as the sole person controlling First Black Enterprise's accounts, knew, or at least recklessly disregarded, such facts.

40. Simeon also knew, or at least recklessly disregarded, that the only significant source of funds to pay investors their promised returns was the money received from the same or other investors, and that such funds would be insufficient to be able to continue to pay such monthly interest or to return investors' principal investments upon their request with 30-days' notice.

41. Simeon also did not tell investors that he was misappropriating the funds they invested and using those funds to pay his personal expenses (as alleged in greater detail in Paragraphs 46-47, below), or that the source of investor "interest" payments were Ponzi-like payments of the very principal investments made by them and other investors. Rather, Simeon falsely promised investors that their investment was guaranteed, risk-free, and/or safe.

## III. DEFENDANTS ENGAGED IN DECEPTIVE CONDUCT, INCLUDING SIMEON MISAPPROPRIATING INVESTOR FUNDS FOR HIS PERSONAL BENEFIT

42. Simeon, directly and on behalf of First Black Enterprises, knowingly, or at least recklessly, engaged in deceptive conduct designed to mislead and defraud investors.

43. In addition to the material misstatements and omissions described in paragraphs 35-41 above, which were also made as part of Defendants' fraudulent scheme, Defendants' actions alleged in this Complaint deceived investors into believing that First Black Enterprises was a legitimate company and that they would make, and were making through their receipt of monthly returns in the form of "interest" payments, returns due to the profitability of the business while their principal was safe and would be fully returned upon request.

44. In reality, Defendants did not use any meaningful amount of investor funds for business or investment purposes, First Black Enterprises did not have any meaningful business dealings, revenues, or profits, and the monthly interest payments to investors were made in a Ponzi-like fashion using their and other investors' principal investments.

45. In addition to Defendants' misuse of investor funds to make Ponzi-like monthly interest payments to investors, Simeon also misappropriated investor funds for his personal benefit.

46. Among other things, between 2019 and 2021, Simeon:

a. withdrew at least $80,000 in cash from First Black Enterprises' bank accounts, and

b. cashed over $40,000 in checks made out to him from First Black Enterprises' bank accounts.

47. Simeon also used approximately $14,500 of investor funds to pay for his and his family's personal expenses, including a payment to a community college, birthday gifts, a car insurance payment, and various purchases at retail and grocery stores.

## IV. DEFENDANTS CEASED PAYMENTS TO INVESTORS WHILE CONTINUING TO SOLICIT NEW INVESTMENTS

48. By Fall 2020, Defendants had missed several monthly interest payments promised to investors, and by approximately November 2020, they stopped making interest payments altogether. Around this time, Simeon became difficult for investors to reach.

49. When investors contacted Simeon about the missed monthly interest payments, Simeon made excuses for why the payments could not be made, including that he was in the hospital and his bank accounts were frozen or closed.

50. Simeon has also failed to return the principal investment of at least four investors who made such a request. In reality, Simeon and First Black Enterprises had already depleted the investor funds and lacked sufficient funds to make the monthly payments or to return investors' principal.

51. Nevertheless, Simeon continued to mislead investors, assuring them that they would receive their interest payments or full refunds, and solicit new investments. Defendants continued to solicit and accept new investor funds through at least February 2021, months after they had stopped paying earlier investors' monthly interest payments.

## FIRST CLAIM FOR RELIEF
**Violations of Securities Act Section 17(a)**
**(Both Defendants)**

52. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 51 of this Complaint.

53. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material

fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

54. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Both Defendants)**

55. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 51 of this Complaint.

56. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

57. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Finding that Defendants committed the violations alleged above;

**II.**

Permanently enjoining Defendants and each of their respective agents, servants, employees and attorneys and all persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5];

**III.**

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and (d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**IV.**

Ordering Defendants to pay civil monetary penalties, pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**V.**

Permanently prohibiting Simeon from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**VI.**

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
September 22, 2021

Richard R. Best
_______________________________

RICHARD R. BEST
REGIONAL DIRECTOR
Sanjay Wadhwa
Wendy B. Tepperman
Pascale Guerrier
Amanda Rios
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-5473 (Guerrier)
Guerrierp@sec.gov