UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                  *Plaintiff*,

-against-

FRANTZ SIMEON and FIRST BLACK ENTERPRISES, INC.,

                  *Defendants*.

21-CV-5266 (ARR) (LGD)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, the Securities and Exchange Commission ("SEC"), alleges that Defendant Frantz Simeon defrauded investors in a Ponzi-like scheme. The SEC claims that Mr. Simeon's actions violated Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and its implementing regulation, Rule 10b-5, 17 C.F.R. § 240.10b-5. Complaint ¶ 6, ECF No. 1.

Following Mr. Simeon's conviction in a parallel criminal action and his failure to file an answer to the Complaint, the SEC moved for default judgment. In response, Mr. Simeon moved pro se for the court to appoint pro bono counsel, to stay this action, and to vacate the entry of default judgment. For the reasons stated below, Mr. Simeon's motion to appoint counsel and stay this action is denied. The SEC's motion for default judgment is denied without prejudice. Mr. Simeon is ordered to answer the SEC's complaint within 30 days, regardless of whether he is able to retain counsel. If he fails to file a responsive pleading, the SEC may renew their motion for default judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

From April 2019 through February 2021, Mr. Simeon engaged in a Ponzi-like offering

1

fraud that raised $335,000 from approximately thirteen investors. Complaint ¶ 1. Through his company First Black Enterprises, Inc., Mr. Simeon made false promises to prospective and existing investors that their investments would garner ten percent monthly "interest" payments, and that investors could exit the investment at any time with the full return of their principal investment. *Id.* ¶ 2. Mr. Simeon deceived prospective investors by misrepresenting his business experience, track record, and the nature of his company's business and investment activities. *Id.* ¶ 3. Instead of legitimately investing investor money, Mr. Simeon used these funds to pay monthly interest payments to existing "investors" and to pay for his personal expenses. *Id.* ¶ 4. In or around Fall 2020, Mr. Simeon stopped providing monthly interest payments and did not return investors' principal investments. *Id.* ¶ 5. However, Mr. Simeon and First Black Enterprises continued to mislead current investors and solicit new investor funds through at least February 2021. *Id.* Many investors lost a significant portion of their principal investments. *Id.*

The SEC initiated this civil action against Mr. Simeon on September 22, 2021. One week previously, on September 15, 2021, Mr. Simeon was indicted in this district on four counts of wire fraud. *See* Indictment ("Ind."), ECF No. 1, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021). Those charges were based on the "same conduct at issue in the SEC Complaint," and the United States Attorney Office for the Eastern District of New York moved to intervene in and stay this action pending the resolution of the parallel criminal action. Mot. to Intervene at 3, ECF No. 8. On November 23, 2021, Magistrate Judge Wicks granted that motion and stayed this case.

On February 8, 2023, Mr. Simeon pled guilty to Count One of the Indictment. Plea Transcript ("Plea Tr."), ECF No. 26, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021). During his plea colloquy, Mr. Simeon admitted that:

> Between February 2019 and December 2020, . . . I knowingly and willfully participated in a scheme to defraud investors of money by material and false and

2

> fraudulent pretenses, representations or promises. I solicited money from people based on promises I knew I could not keep, and that I ultimately was not able to keep, as a way to get them to invest in me and my . . . company. These include promises of a guaranteed 10 percent return on investments, historical and future projected rate on return, as well as the ability of investors to withdrew their fund from my business at any time with some period of notice.

*Id*. at 29. Mr. Simeon further admitted that "when [he] w[as] making these statements, [he], in fact, knew that [he] would not be able to pay this money back." *Id*. at 30. On March 1, 2024, District Judge Cogan sentenced Mr. Simeon to 24 months' imprisonment, and ordered restitution in the amount of $202,415 and forfeiture in the amount of $202,415, for a total repayment obligation of $404,830. *See* Judgment, ECF No. 39, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021).

On April 4, 2024, the SEC moved to lift the stay in this case. Status Report, ECF No. 27. In addition, the SEC requested authorization to contact Mr. Simeon directly to determine whether he was represented by counsel or proceeding pro se. *Id*. at 2. The SEC had previously received a letter, dated December 4, 2020, from Attorney Marjorie Cajoux, which claimed that Mr. Simeon and First Black Enterprises had retained her to represent them in his civil proceeding. *Id*. Despite her representations to the SEC, Ms. Cajoux never entered an appearance on the docket and ignored over a dozen attempts by the SEC to contact her about the status of this case and her representation of Mr. Simeon. *Id*.

Magistrate Judge Dunst denied the SEC's requests to lift the stay and to contact Mr. Simeon directly, and instead ordered Mr. Simeon to confirm by April 19, 2024 whether he was represented by counsel. Electronic Order of April 5, 2024. After Mr. Simeon failed to respond to the court and the SEC's inquiries, the SEC renewed its requests to lift the stay and to contact Mr. Simeon directly, which Judge Dunst granted on May 7, 2024. Electronic Order of May 7, 2024. On June 13, 2024, the SEC filed a letter stating that it had spoken with Mr. Simeon at FCI Butner, where

3

he is presently incarcerated, and that Mr. Simeon confirmed that he was still represented by Ms. Cajoux. Status Report at 2, ECF No. 30. The SEC again attempted to contact Ms. Cajoux by email, phone, and physical mail, but received no response from Ms. Cajoux. *Id*. The SEC also notified the court that it intended to seek a certificate of default, followed by entry of a default judgment. *Id*. at 3. In response, Judge Dunst ordered the SEC to seek an entry of default by July 8, 2024 and to refrain from filing a default judgment motion before August 1, 2024. Electronic Order of June 14, 2024.

On July 5, 2024, the SEC sought a certificate of default, which the clerk entered on July 9, 2024, finding that neither First Black Enterprises, Inc. nor Mr. Simeon appeared in the action. Clerk's Entry of Default, ECF No. 33. First Black Enterprises, Inc. and Mr. Simeon were notified of the entry of default pursuant to Fed. R. Civ. P. Rule 55A. *Id.* On July 12, 2024, Mr. Simeon filed a pro se letter dated June 3, 2024, which explained that "the delay in [his] response" stemmed from Ms. Cajoux's failure to communicate with him and that he was "prepared to participate in any necessary proceedings." Simeon Letter, ECF No. 34. Mr. Simeon also requested a stay of this case until he could secure new counsel, and that all further communications should be directed to him at FCI Butner in the interim.

On July 16, 2024, in response to Mr. Simeon's letter, Judge Dunst ordered Mr. Simeon to provide a status update by August 1, 2024 regarding his efforts to secure new counsel. Electronic Order of July 16, 2024. However, Judge Dunst denied Mr. Simeon's request for a stay of proceedings. *Id*. Mr. Simeon failed to comply with that order. Instead, on August 1, 2024, the SEC filed a letter stating that it had not received any update from Mr. Simeon or Ms. Cajoux. Status Report, ECF No. 36. On August 2, 2024, Judge Dunst ordered the parties to submit a joint status report by August 16, 2024. Electronic Order of August 2, 2024. On August 19, 2024, the SEC

4

informed the court that it again had not received any correspondence from Mr. Simeon indicating that he had retained new counsel. Status Report, ECF No. 38. Judge Dunst then granted the SEC permission to file a motion for default judgment by October 21, 2024. Electronic Order of August 20, 2024.

On October 21, 2024, the SEC filed its motion for default judgment against Mr. Simeon. *See* Mot. Def. J., ECF No. 41. On October 22, 2024, Judge Dunst ordered Mr. Simeon to respond to the SEC's motion by December 3, 2024. Electronic Order of October 22, 2024. Mr. Simeon filed his opposition to the motion, which was dated as mailed on November 23, 2024, on December 3, 2024. Resp. in Opp. to Mot. D.J., ECF No. 45. Mr. Simeon represented that he had filed a habeas motion under 28 U.S.C. § 2255 challenging his criminal conviction, and requested that the court "dismiss the SEC's motion for default judgment pending resolution of his § 2255 motion or, in the alternative, . . . stay the[ SEC's] proceedings for 90 days to allow resolution of the pending § 2255 motion or to retain new counsel, whichever occurs first." *Id*. at 8. In response, the SEC's reply noted that Mr. Simeon had not actually filed a § 2255 motion in his criminal case, and that a stay was not warranted even if he had filed such a motion. SEC's Reply at 2, ECF No. 47. However, the SEC consented to withdraw its motion for default judgment in light of Mr. Simeon's request for an additional 90 days to retain counsel or file a responsive pleading. *Id*. at 2–3.

On December 18, 2024, Judge Dunst accepted the SEC's request to withdraw its motion, and ordered Mr. Simeon to have new counsel file a notice of appearance by March 17, 2025 and to file a responsive pleading by March 31, 2025. Electronic Order of December 18, 2025. Judge Dunst further ordered that, if Mr. Simeon was unable to retain counsel by that date, Mr. Simeon must file a responsive pleading pro se by March 31, 2025. *Id*. Finally, Judge Dunst cautioned that those deadlines would not be extended further absent a showing of good cause. *Id*.

5

Mr. Simeon failed to comply with those deadlines, and did not enter a counseled or pro se responsive pleading to the SEC's complaint. On April 11, 2025, the SEC renewed its motion for default judgement. Second Mot. for D.J., ECF No. 50. On May 12, 2025, Mr. Simeon, acting pro se, filed a letter dated May 7, 2025, in which he represented that he had filed a § 2255 motion in his criminal matter, requested a stay of proceedings pending resolution of that motion, and requested that the court appoint pro bono counsel to represent him in the SEC's civil action. Mot. to Appoint Counsel, ECF No. 52.[1] He filed the same pro se memorandum in response to the SEC's Second Motion for Default Judgment. Def.'s Reply, ECF No. 53.

## DISCUSSION

### A. Motion to Appoint Counsel[2]

Following the abandonment of his attorney,[3] Mr. Simeon moves for court appointed counsel in this civil proceeding. While the Constitution guarantees criminal defendants a right to counsel in their criminal case, there is no constitutional right to counsel in a civil case. *See In re*

---

[1] I note that the memorandum accompanying Mr. Simeon's letter in response to the SEC's second motion for default judgment is dated February 26, 2025, which predates the SEC's motion filed on April 11, 2025. Based on my review of the letter which indicates that Mr. Simeon is no longer in contact with the clerk assisting him with his legal matters and the substance of the accompanying memorandum, it appears that it was prepared in response to the SEC's December 17, 2024 reply brief, where the SEC consented to withdraw its first motion for default judgment without prejudice. While the memorandum does not constitute a responsive pleading to the SEC's complaint, it appears to be a good faith effort from Mr. Simeon to contest the default of his civil proceedings.

[2] Following the practice of other courts in this circuit when considering a pro se motion to appoint pro bono counsel and to vacate an entry of default, I will first consider Mr. Simeon's motion to appoint pro bono counsel. *See Sec. & Exch. Comm'n v. Patel*, No. 3:21-CV-994, 2022 WL 2704099 (D. Conn. July 12, 2022).

[3] While Mr. Simeon has not specified in any of his submissions that he has attempted to retain counsel after Ms. Cajoux became nonresponsive, his current incarceration in federal custody presents an obvious barrier to obtaining counsel.

*Martin–Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). "[T]here is no panel of government-funded attorneys available to be appointed to represent litigants in civil cases." *Jenkins v. Morris*, No. 11–CV–4178, 2012 WL 1887134, at *4 (E.D.N.Y. May 23, 2012). While a court may "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1), the federal in forma pauperis statute "does not authorize coercive appointments of counsel." *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 309 (1989).

In deciding motions for appointment of civil counsel, courts "ask[] first whether the claimant has met 'a threshold showing of some likelihood of merit'" or "substance." *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (quoting *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 174 (2d Cir. 1989)). "If a plaintiff satisfies this threshold requirement, courts consider secondary factors, including the 'plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in . . . light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity.'" *Parks v. Smith*, 505 F. App'x 42, 43 (2d Cir. 2012) (quoting *Cooper*, 877 F.2d at 172). "Each case must be decided on its own facts" and no factor is necessarily controlling. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). A court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper*, 877 F.2d at 172.

Mr. Simeon fails to meet the threshold requirement of demonstrating any meritorious defense. The SEC's claims against Mr. Simeon under Securities Act § 17(a) (15 U.S.C. § 77q(a)), Exchange Act § 10(b) (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5), are based on the same securities fraud scheme that he pled guilty to in his parallel criminal prosecution for mail fraud. *See* Indictment, ECF No. 1, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021);

7

*see also* Mem. Order Granting Intervention and Stay, ECF No. 9 (noting that a "review of the criminal indictment and the civil complaint makes clear that the alleged wrongdoing in both cases—namely, Defendants' alleged securities fraud scheme—overlap dramatically"). Liability under Section 10(b) and Rule 10b-5 requires proof that the defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 381 (S.D.N.Y. 2007) (quoting *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). "A false statement is made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud." *S.E.C. v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quotation marks omitted). "The standard for establishing a violation of Section 17(a) of the Exchange Act is essentially the same . . . though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)." *S.E.C. v. LaGuardia*, 679 F. Supp. 3d 34, 40 (S.D.N.Y. 2023) (quotation marks omitted).

Mr. Simeon's guilty plea and colloquy in the criminal action establish his liability in the present civil action. Mr. Simeon admitted that he "participated in a scheme to defraud investors by material and false and fraudulent pretenses, representations or promises," including promises of a "guaranteed 10 percent return on investments" and "the ability of investors to withdr[a]w their fund[s] from [his] business at any time." Plea Tr. at 26. Mr. Simeon further admitted that, "when [he] w[as] making these statements, [he], in fact, knew that [he] would not be able to pay this money back." *Id*. at 30. Due to the admissions in his criminal case, Mr. Simeon is unlikely to have a viable defense to the SEC's civil claims premised on the same fraudulent scheme.[4]

---

[4] Indeed, Mr. Simeon's defenses to this civil action are likely foreclosed by the collateral estoppel effect of issues established in his criminal action. "The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the

Nor does Mr. Simeon's request for pro bono counsel identify any meritorious defenses. *See* Mot. to Appoint Counsel, ECF No. 52. He primarily argues that he "suffered complete abandonment by his attorney at the most critical stages of both his criminal and civil matters." *Id.* at 3. However, his motion does not explain how he received ineffective assistance of counsel in his parallel criminal proceeding. In that proceeding, Mr. Simeon was represented by counsel from the Federal Defenders of New York. At the guilty plea hearing before Magistrate Judge Henry, Mr. Simeon stated that he had no problems communicating with his attorneys, and his attorneys stated that they had no problems communicating with their client. *See* ECF No. 20-1 at 8–11, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021). Accordingly, Mr. Simeon has failed to make the requisite "threshold showing of some likelihood of merit." *Cooper*, 877 F.2d at 174. Although submissions from pro se parties are held "to less stringent standards than formal pleadings drafted by lawyers," *Hayes v. Dep't of Educ.*, 20 F. Supp. 3d 438, 446 (S.D.N.Y. 2014) (internal quotation marks omitted), Mr. Simeon has not provided any basis to believe that the appointment of counsel would increase the likelihood of a just determination in this case.

For the reasons above, Mr. Simeon's motion to appoint pro bono counsel is denied.

**B. Motion to Stay**

Mr. Simeon moves to stay this proceeding pending resolution of a § 2255 motion filed in his parallel criminal proceeding. Def.'s Reply at 2–4. He argues that the abandonment of his attorney and his current incarceration constitute exceptional circumstances that warrant a stay of this action as he challenges his criminal conviction.

---

collateral estoppel effect of a criminal conviction in the subsequent civil case." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986).

9

His argument fails for multiple reasons. First, a review of the docket in his parallel criminal proceedings indicate that no § 2255 motion has been filed. *See* Dkt. No. 21-CR-479. Second, even if he had filed a pending § 2255 motion, it is within a district court's discretion to stay civil proceedings in "the interests of justice." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986). Indeed, the Second Circuit wrote approvingly of the D.C. Circuit's reasoning that "the Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Id.* Following longstanding precedent, courts in this circuit have afforded preclusive effects to criminal convictions and enforced civil monetary penalties during the pendency of a habeas petition. *See Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-CV-5231, 2017 WL 11681874, at *2 (S.D.N.Y. Nov. 29, 2017). Even if Mr. Simeon had filed a habeas petition in his parallel criminal proceeding, I would not stay this case as it would not serve the interests of justice. His motion for a stay is denied.

**C. Motion for Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Only after default has been entered can a party seek a default judgment. *See* Fed. R. Civ. P. 55(b).

The Clerk of Court entered default against Mr. Simeon on July 9, 2024, following his failure to appear or otherwise defend this action. *See* ECF No. 33. After Mr. Simeon's failure to file an answer by the March 31, 2025 deadline, the SEC moved on April 11, 2025 for default judgment. On May 12, 2025, Mr. Simeon responded with a letter and pro se motion to set aside

10

the entry of default entered against him, and to stay this proceeding pending further resolution of his criminal case.

A party defaults under Rule 55 when he "has failed to plead or otherwise defend" the case at hand. In effectuating Rule 55, the Second Circuit "ha[s] embraced a broad understanding of the phrase 'otherwise defend.'" *City of N.Y. v. Michalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"). However, Rule 55 is more forgiving when a defaulting party appears pro se; "as a general rule a district court should grant a default judgment sparingly . . . when the defaulting party is appearing pro se." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Indeed, a court is obliged to provide adequate notice of a default judgment against a pro se party. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013). A court has an even greater obligation to a pro se party who is incarcerated. *See Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir. 1983) ("The interests of justice will be better served if before granting a default judgment or a dismissal by virtue of default in the case, as here, of a pro se incarcerated plaintiff, he is advised by the court of the action contemplated.").

The record demonstrates that Mr. Simeon has been proceeding pro se since the stay in this action was lifted on May 7, 2024. On May 20, 2024, Mr. Simeon spoke with the SEC via telephone at FCI Butner and stated his belief that he was still represented by Ms. Cajoux. June 13, 2024 Status Report, ECF No. 30. However, the SEC was unable to reach Ms. Cajoux to draft a joint status report after multiple attempts. *Id.* On July 12, 2024, Mr. Simeon submitted a letter pro se advising the court that he too had been unable to communicate with Ms. Cajoux. July 12, 2024 Letter, ECF No. 34. In his opposition to the SEC's first motion for default judgment, he again

11

described Ms. Cajoux's abandonment, while providing no further update as to his efforts to retain new counsel. *See* ECF No. 45.

Magistrate Judge Dunst's December 18, 2024 order put Mr. Simeon on notice that his continuing failure to file a responsive pleading would result in default. However, based on the arguments in Mr. Simeon's May 7, 2025 letter and its supporting memorandum, it is unclear whether he understood that his lack of counsel in this civil proceeding does not excuse him from his procedural obligation to respond to the SEC's complaint. While I do not condone Mr. Simeon's failure to comply with the deadlines set in Judge Dunst's order, I recognize the difficulty of litigating a complicated securities action under his circumstances.[5] Acknowledging his pro se status, I construe Mr. Simeon's instant motion as an opposition to the SEC's renewed motion for default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("Even if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."). "The court's duty ['to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal

---

[5] The Second Circuit has affirmed a district court's decision to enter a default judgment against a defendant who submitted a letter opposing the plaintiff's motion for default judgment. *See S.E.C. v. Great Am. Techs., Inc.*, No. 07-CV-10694, 2010 WL 1416121, at *1 (S.D.N.Y. Apr. 8, 2010), *aff'd sub nom. S.E.C. v. Setteducate*, 419 F. App'x 23 (2d Cir. 2011) (overruling defendant's objections to default judgment where the "letter does not address the issues presented in the motion in question").

Here, I recognize that Mr. Simeon's opposition raises two arguments that have nothing to do with the substance of his civil liability. First, Mr. Simeon argues that I should not consider the SEC's default judgment motion because he has a pending § 2255 motion in his parallel criminal proceeding. Opp. at 2. However, it appears that he has not filed the motion in his parallel criminal proceeding. Furthermore, even a pending § 2255 motion does not preclude me from reaching a decision on the SEC's motion for default judgment. Second, citing Ms. Cajoux's failure to appear in this proceeding or represent him in any way, Mr. Simeon argues that he received ineffective assistance of counsel in his parallel criminal proceedings. However, he was provided effective representation by pro bono counsel from the Federal Defenders of New York. *See* supra at 8–9.

12

training'] is even broader in the case of a pro se defendant who finds herself in court against her will with little time to learn the intricacies of civil procedure." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). My attentiveness to protecting Mr. Simeon's rights also conforms with the Second Circuit's observation that there is less deference afforded district court judges in issuing default judgment rulings during the pre-answer stage of litigation because all proceedings are determined solely on papers. *See Davis v. Musler*, 713 F.2d 907, 912–13 (2d Cir. 1983). Therefore, in the interest of justice, the SEC's motion for entry of default judgment is denied, and I grant Mr. Simeon an additional 30 days to file a responsive pleading—in the form of an answer—to the SEC's complaint.

For the reasons above, I deny the SEC's motion for default judgment and order Mr. Simeon to file an answer to the SEC's complaint within thirty days, either pro se or counseled. If he fails to do so given this final warning, the SEC may again move for default judgment—a potentially case ending sanction—as Mr. Simeon's failure to file an answer would result in the admission of each well-plead allegation in the Complaint.

## CONCLUSION

For the reasons above, I deny Mr. Simeon's motion for pro bono counsel and to stay this proceeding. Furthermore, I deny the SEC's renewed motion for default judgment without prejudice. Mr. Simeon is ordered to file an answer to the Complaint within thirty days. For the avoidance of doubt, Mr. Simeon is instructed that he must file an answer pro se if he cannot find an attorney to represent him in this matter. If he fails to do so, the SEC may move again for default judgment.

SO ORDERED.

                                                                             /s/
                                                 Allyne R. Ross
                                                 United States District Judge

Dated:       July 22, 2025
              Brooklyn, New York