UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

               *Plaintiff*,

   -against-

FRANTZ SIMEON,

               *Defendant*.

21-CV-5266 (ARR) (LGD)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

      Plaintiff, the Securities and Exchange Commission ("SEC"), alleges that Defendant Frantz Simeon defrauded investors in a Ponzi-like scheme. The SEC claims that Mr. Simeon's actions violated Section 17(a) of the Securities Act of 1933 ("Section 17(a)"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), 15 U.S.C. § 78j(b), and its implementing regulation, Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). Complaint ¶ 6, ECF No. 1.

      As Mr. Simeon has not answered or otherwise moved with respect to the Complaint, the SEC now seeks a default judgment ordering injunctive relief, a permanent officer and director bar, and disgorgement with prejudgment interest. For the reasons below, the SEC's motion for default judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

      My previous Opinion and Order denying Mr. Simeon's motion to appoint counsel and request to stay this action contains the full factual and procedural background of this case. *See* ECF No. 54.

      From April 2019 through February 2021, Mr. Simeon engaged in a Ponzi-like offering

fraud that raised $335,000 from approximately thirteen investors. Complaint ¶ 1. Through his company First Black Enterprises, Inc. ("FBE"), Mr. Simeon made false promises to prospective and existing investors that their investments would garner ten percent monthly "interest" payments, and that investors could exit the investment at any time with the full return of their principal investment. *Id.* ¶ 2. Mr. Simeon deceived prospective investors by misrepresenting his business experience, track record, and the nature of his company's business and investment activities. *Id.* ¶ 3. Instead of legitimately investing investor money, Mr. Simeon used these funds to pay monthly interest payments to existing "investors" and to pay for his personal expenses. *Id.* ¶ 4. In or around Fall 2020, Mr. Simeon stopped providing monthly interest payments and did not return investors' principal investments. *Id.* ¶ 5. However, Mr. Simeon and First Black Enterprises continued to mislead current investors and solicit new investor funds through at least February 2021. *Id.* Many investors lost a significant portion of their principal investments. *Id.*

The SEC initiated this civil action against Mr. Simeon on September 22, 2021. One week previously, on September 15, 2021, Mr. Simeon was indicted in this district on four counts of wire fraud. *See* Indictment ("Ind."), ECF No. 1, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021) ("Criminal Action"). Those charges were based on the "same conduct at issue in the SEC Complaint," and the United States Attorney Office for the Eastern District of New York moved to intervene in and stay this action pending the resolution of the parallel Criminal Action. *See* Mot. to Intervene at 3, ECF No. 8. On November 23, 2021, Magistrate Judge Wicks granted that motion and stayed this case.

On February 8, 2023, Mr. Simeon pled guilty to Count One of the Indictment. Plea Transcript ("Plea Tr."), ECF No. 26, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021). During his plea colloquy, Mr. Simeon admitted that:

2

> Between February 2019 and December 2020, . . . I knowingly and willfully participated in a scheme to defraud investors of money by material and false and fraudulent pretenses, representations or promises.  I solicited money from people based on promises I knew I could not keep, and that I ultimately was not able to keep, as a way to get them to invest in me and my . . . company.  These include promises of a guaranteed 10 percent return on investments, historical and future projected rate on return, as well as the ability of investors to withdrew their fund from my business at any time with some period of notice.

*Id*. at 29. Mr. Simeon further admitted that "when [he] w[as] making these statements, [he], in fact, knew that [he] would not be able to pay this money back." *Id*. at 30. On March 1, 2024, District Judge Cogan sentenced Mr. Simeon to 24 months' imprisonment, and ordered restitution in the amount of $202,415 and forfeiture in the amount of $202,415, for a total repayment obligation of $404,830. *See* Judgment, ECF No. 39, *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021).

After Mr. Simeon failed to respond to the court and the SEC's inquiries in this civil case, Magistrate Judge Dunst ordered the SEC to seek an entry of default by July 8, 2024. Electronic Order of June 14, 2024. On July 5, 2024, the SEC sought a certificate of default, which the clerk entered on July 9, 2024, finding that neither FBE nor Mr. Simeon have appeared in the action. Clerk's Entry of Default, ECF No. 33. FBE and Mr. Simeon were notified of the entry of default pursuant to Fed. R. Civ. P. Rule 55A.[1] *Id.*

Judge Dunst granted the SEC permission to file a motion for default judgment. Electronic Order of August 20, 2024. On October 21, 2024, the SEC filed its first motion for default judgment against Mr. Simeon. *See* ECF No. 41. The SEC consented to withdraw its motion after Mr. Simeon requested an additional 90 days to retain counsel or file a responsive pleading. *Id*. at 2–3. However, Mr. Simeon failed to enter a counseled or *pro se* responsive pleading to the SEC's complaint. On

---

[1] FBE was dismissed from this action on October 22, 2024. *See* ECF No. 43.

April 11, 2025, the SEC renewed its motion for default judgement. *See* ECF No. 50. On May 12, 2025, Mr. Simeon, acting *pro se*, filed a letter dated May 7, 2025, in which he represented that he had filed a § 2255 motion in his criminal matter, moved for a stay of this case pending resolution of that motion, and requested that I appoint pro bono counsel to represent him in the SEC's civil action. *See* Mot. to Appoint Counsel, ECF No. 52. Mr. Simeon filed the same *pro se* memorandum in response to the SEC's Second Motion for Default Judgment. *See* ECF No. 53. Acknowledging Mr. Simeon's *pro se* status, I denied the SEC's second motion for default judgment without prejudice and gave one final warning to Mr. Simeon that he must answer the SEC's complaint within 30 days. I also denied Mr. Simeon's motion to appoint counsel and to stay this action.

I granted leave for the SEC to renew their motion for default judgment if Mr. Simeon failed to file a responsive pleading. Following Mr. Simeon's failure to answer the SEC's complaint, the SEC moved for default judgment on September 29, 2025. Third Mot. for D.J. ("Mot."), ECF No. 58. The motion is unopposed as Mr. Simeon has neither filed an opposition nor retained counsel to appear on his behalf.

## DISCUSSION

### A. Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" the case at hand. Fed. R. Civ. P. 55(a). Only after default has been entered can a party seek a default judgment. *See* Fed. R. Civ. P. 55(b).

The decision to grant a motion for a default judgment lies in the sound discretion of the

4

trial court. *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013). When considering whether to grant a default judgment, a court must be "guided by the same factors [that] apply to a motion to set aside entry of a default." *First Mercury Ins. Co. v. Schnabel Roofing of Long Island, Inc.*, No. 10 Civ. 4398, 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011); *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense. *See Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010); *Enron*, 10 F.3d at 96.

In effectuating Rule 55, the Second Circuit "ha[s] embraced a broad understanding of the phrase 'otherwise defend.'" *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"). However, Rule 55 is more forgiving when a defaulting party appears *pro se*; "as a general rule a district court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro se*." *Enron*, 10 F.3d at 96. Indeed, a court is obliged to provide adequate notice of a default judgment against a *pro se* party. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013). A court has an even greater obligation to a *pro se* party who is incarcerated. *See Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir. 1983) ("The interests of justice will be better served if before granting a default judgment or a dismissal by virtue of default in the case, as here, of a pro se incarcerated plaintiff, he is advised by the court of the action contemplated.").

As to the first factor, a defendant's failure to respond to the complaint is sufficient to demonstrate willfulness. *See Bds. of Trs. of Ins., Annuity, & Apprenticeship Training Funds of*

5

*Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12-CV-3363, at *5 (E.D.N.Y. Feb. 3, 2014) (the defendant's nonappearance and failure to respond equated to willful conduct), *report & recommendation adopted*, No. 12-CV-3363, 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014). Here, the Clerk of Court entered default against Mr. Simeon on July 9, 2024, following his failure to appear or otherwise defend this action. *See* ECF No. 33. After Mr. Simeon's failure to file an answer by the March 31, 2025 deadline, the SEC moved for default judgment on April 11, 2025. On May 12, 2025, Mr. Simeon responded with a letter and *pro se* motion to set aside the entry of default entered against him, and to stay this proceeding pending further resolution of his criminal case. Acknowledging his *pro se* status, I construed Mr. Simeon's motion to stay this proceeding and appoint counsel as an opposition to the SEC's renewed motion for default judgment. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("Even if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion."). Acknowledging the difficulties presented by defendant's incarceration and *pro se* status, I granted Mr. Simeon an additional 30 days to file an answer to the SEC's complaint. *See* ECF No. 54.

Mr. Simeon has failed to do so, and the entry of a default judgment is now unquestionably appropriate in this case. My July 22, 2025 order put Mr. Simeon on notice that his continuing failure to file a responsive pleading would result in default. *See* ECF No. 54. The order clearly stated that his lack of counsel in this civil proceeding does not excuse him from his procedural obligation to respond to the SEC's complaint and I ordered Mr. Simeon to file an answer "either pro se or counseled." *Id.* at 12–13. Here, the SEC properly served Mr. Simeon with the renewed motion for default judgment, but Mr. Simeon has not answered, responded, or requested an extension of time in which to respond. Defendant's failure to respond or answer the Complaint

therefore establishes willfulness. Concerning the second factor, Mr. Simeon's failure to respond and the SEC's efforts to prosecute its case are sufficient to demonstrate that ignoring the default would prejudice the SEC, "as there are no additional steps available to secure relief in this Court." *Flanagan v. N. Star Concrete Const., Inc.*, No. 13-CV-2300, 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014); *Joseph*, 970 F. Supp. 2d at 148 (same). Third, the defaulting Defendant cannot establish a meritorious defense, because "[w]here a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment." *Joseph*, 970 F. Supp. 2d at 143.

As all three factors are satisfied, a default judgment is proper.

## II. Liability

Having determined that Mr. Simeon has defaulted, I next consider whether the SEC's pleadings adequately allege fraudulent activity prohibited by Section 10(a), Rule 10b-5, and Section 17(a). A default is a concession of all well-pleaded factual allegations of liability in the complaint. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Upon default, the court accepts the factual allegations in the complaint pertaining to liability as true. *See Cement & Concrete Workers*, 699 F.3d at 234; *Friedman v. Sharinn & Lipshie, P.C.*, No. 12-CV-3452, 2013 WL 1873302, at *3 (E.D.N.Y. Mar. 28, 2013) (in deciding whether to grant liability on a motion for default judgment, a court must consider whether "the claims were pleaded in the complaint, thereby placing the defendant on notice"), *report & recommendation adopted*, No. 12-CV-3452, 2013 WL 1869924 (E.D.N.Y. May 3, 2013); *Unitrans Consol., Inc. v. Classic Closeouts, LLC*, No. 9-CV-2098, 2010 WL 1265206, at *2 (E.D.N.Y. Mar. 31, 2010) (observing that the "well-pleaded factual allegations

in the complaint are deemed admitted upon a defendant's default").

On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion. *See Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014). The question is whether the plaintiff's allegations in the complaint, if accepted as true, establish liability for the plaintiff's claims. *See Mickalis Pawn Shop*, 645 F.3d at 137 ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (quotation marks omitted and alterations adopted).

In this case, the SEC alleges that Mr. Simeon has violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and its implementing regulation Rule 10b-5. Compl. ¶¶ 52–57.

Pursuant to Section 17(a), "[i]t shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a).

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person, "by the use of any means or instrumentality of interstate commerce or of the mails,"

> [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the

public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 further specifies that, in connection with the "purchase or sale of any security," it is unlawful, "directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange," (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5.

As a preliminary matter, the SEC has shown that Mr. Simeon used "any means or instrumentality of interstate commerce" in connection with his misconduct by alleging that he solicited prospective investors by telephone and text message. Compl. ¶ 20. *See SEC v. Baldassare*, No. 11-CV-5970, 2014 WL 2465622, at *6 (E.D.N.Y. May 29, 2014) (finding that a defendant's use of even purely intrastate telephone calls in some phase of the transaction are enough to satisfy the instrumentality of interstate commerce element).

It is a violation of Section 10(b) and Rule 10b-5 for a person to have "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (quotation marks and citations omitted); *SEC v. Baldassare*, No. 11-CV-5970, 2014 WL 2465622, at *4 (E.D.N.Y. May 29, 2014) (same). "Information is material if a reasonable investor would consider it important in the decision to buy or sell securities." *Id.* at *5 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). "Essentially the same elements are required under Section 17(a)(1)-(3) in connection with the offer

or sale of a security, though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999). "A false statement is made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud." *S.E.C. v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quotation marks omitted).

As to the first and second factors, Mr. Simeon made material misrepresentations to investors while acting with scienter. Mr. Simeon falsely stated "that he had decades of experience as a successful businessman," that "[investors] would receive a 10% return or 'interest' each month on their invested principal" while knowingly conducting a pyramid scheme, "that [investors'] investment was risk-free, safe and insured against losses," and that "investments would be used for investment purposes." Compl. ¶¶ 35–41. The SEC has established scienter by alleging that the defendant "knew, or at least recklessly disregarded" that the entire investment scheme was fraudulent. *Id.* ¶¶ 38–40. When investors contacted Mr. Simeon about the failed returns, Mr. Simeon made excuses for why the payments could not be made. *Id.* ¶ 49.

Furthermore, the SEC's claims against Mr. Simeon under Section 17(a), Section 10(b), and Rule 10b-5 are based on the same securities fraud scheme that he pled guilty to in his parallel criminal prosecution for mail fraud.[2] *See* Indictment, ECF No. 1, *United States v. Simeon*, 21-CR-

---

[2] Notwithstanding his default in this civil action, Mr. Simeon's defenses are likely foreclosed by the collateral estoppel effect of issues established in the Criminal Action. *See Gelb v. Royal Globe Ins.* Co., 798 F.2d 38, 43 (2d Cir. 1986) ("The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in the subsequent civil case."); *Sec. & Exch. Comm'n v. LaGuardia*, 679 F. Supp. 3d 34, 39–40 (S.D.N.Y. 2023) ("Courts are generally in agreement that "a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in subsequent civil proceedings as to those matters determined by judgment in the criminal case."). Courts in this circuit have found that a defendant's allocution to securities offenses in a criminal prosecution have a binding estoppel effect in a civil action. *See S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319, 326 (S.D.N.Y. 2007).

479 (E.D.N.Y. Sept. 15, 2021); *see also* Mem. Order Granting Intervention and Stay, ECF No. 9 (noting that a "review of the criminal indictment and the civil complaint makes clear that the alleged wrongdoing in both cases—namely, Defendants' alleged securities fraud scheme—overlap dramatically"). In addition to his default, Mr. Simeon's guilty plea and colloquy in the Criminal Action almost certainly establishes his liability in the present civil action. Mr. Simeon admitted that he "participated in a scheme to defraud investors by material and false and fraudulent pretenses, representations or promises," including promises of a "guaranteed 10 percent return on investments" and "the ability of investors to withdr[a]w their fund[s] from [his] business at any time." Plea Tr. at 26. To the scienter prong, Mr. Simeon further admitted that, "when [he] w[as] making these statements, [he], in fact, knew that [he] would not be able to pay this money back." *Id*. at 30.

Finally, regarding the third factor, the SEC has adequately alleged that the investment opportunity that Mr. Simeon and FBE offered and sold to investors are "securities" as defined under Securities Act Section 2(a)(1) and Exchange Act Section 3(a)(10). In *Reves v. Ernst & Young*, the Supreme Court identified four factors to consider whether a note is a security: 1) the motivations of the seller and buyer to enter into the transaction; 2) the distribution plan of the instrument; 3) the reasonable expectations of the investing public; and 4) the existence of another regulatory scheme that significantly reduces the risk of the investment, thereby rendering the application of the Securities Act unnecessary. 494 U.S. 56 at 66–67 (1990). Mr. Simeon, who has defaulted, has not argued that the investments at issue in this case are not securities. First, Mr. Simeon "told investors that . . . they would also receive a 10% monthly return on any subsequent principal investments, such that the more they invested, the more money they would make." Compl. ¶ 29. The investors were motivated by the generation of profits and many of the checks

made out to FBE included the word "investment" in the check memo line. *Id.* ¶¶ 15, 24. Second, while the investments do not appear to have been offered to a broad segment of the public, they were offered to members of the Haitian-American community in the New York City area, a group who would benefit from the protection of the securities laws. Therefore, this factor weighs neutrally. *See McNabb v. S.E.C.*, 298 F.3d 1126, 1132 (9th Cir. 2002) (finding that the distribution plan factor weighed neutrally when issued to only six individuals). Third, the reasonable expectations of investors were that they were making an investment, which is reflected by the fact that they frequently wrote "investment" in their check memo lines. Compl. ¶ 24; *see Reves*, 494 U.S. at 69 (the "fundamental essence of a 'security' [is] "its character as an 'investment'"). Finally, there is no other regulatory scheme or risk-reducing factor present, and Ponzi schemes do not appear to fall within the judicially crafted list of non-securities instruments. *See Reves v. Ernst & Young*, 494 U.S at 65. Therefore, I find that the investment opportunity at issue constituted "securities" under the investment notes framework.

In the alternative, the investments in question also constitute "securities" under the investment contract standard established in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946). The SEC must show: (i) an investment of money; (ii) in a common enterprise; and (iii) with profits to be derived solely from the efforts of others. *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) (analyzing *S.E.C. v. W.J. Howey Co.*, 328 U.S. at 298–99).

Here, the first element, an investment of money, is satisfied because investors sent money as directed by Mr. Simeon to participate in the investment. Compl. ¶¶ 15–28. A common enterprise can be established by showing horizontal commonality: that "the fortunes of each investor depend upon the profitability of the enterprise as a whole," which requires a "sharing or pooling of funds." *Revak*, 18 F.3d at 87. This requirement is satisfied because the bulk of the investors' funds were

pooled in FBE's operating account. Compl. ¶ 27. Investors participated in Mr. Simeon's offering by transferring funds directly to FBE's bank accounts, primarily via personal checks made out to FBE for their initial investment principal. *Id.* ¶ 24. Mr. Simeon, the sole signatory on FBE's bank accounts, *id.* ¶ 13, pooled the investors' funds together in the bank accounts and used new investor funds to make "interest payments" to earlier investors. *Id.* ¶ 34. Finally, the third element, a reasonable expectation of profits solely from the efforts of the promoter or a third party, is satisfied because the investors reasonably expected to generate returns through Mr. Simeon's experience and purported investment efforts. *Id.* ¶¶ 17–22. The investments constitute investment contracts even though the investors expected a fixed monthly interest return instead of a variable return. *See S.E.C. v. Edwards*, 540 U.S. 389, 394 (2004).

For the reasons above, the allegations in the Complaint are sufficient to demonstrate Defendant's liability under Section 10(b), Rule 10b-5, and Section 17(a).

## III. The SEC's Requested Remedies

The SEC requests that Mr. Simeon be required to disgorge his ill-gotten gains and that the SEC be awarded the injunctive relief described below.

In considering a motion for default judgment and damages, "the well-pleaded factual allegations of the complaint are taken as true, except those relating to damages." *Thomas v. Biocine Sclavo*, No. CV-94-1568, 1998 WL 51861, at *3 (N.D.N.Y. Feb. 4, 1998) (citing *Au Bon Pain Corp.*, 653 F.2d at 65). On a motion for default judgment, the plaintiff bears the burden to present proof of damages. *See Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13-CV-4358, 2014 WL 2169769, at *6 (E.D.N.Y. May 23, 2014), *report & recommendation adopted*, No. 13-CV-4358, 2014 WL 2765793 (E.D.N.Y. June 18, 2014). Rule 55(b)(2) permits, but does not require, a court to conduct a hearing in order to determine the amount of damages to award after a liability

judgment by default. Fed. R. Civ. P. 55(b)(2); *see Cement & Concrete Workers*, 699 F.3d at 234 ("Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages.'" (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))); *Finkel*, 577 F.3d at 87 ("Rule 55(b) commits this decision to the sound discretion of the district court."). A court may evaluate the fairness of a proposed damages award by relying on affidavits and documentary evidence. *See Cement & Concrete Workers*, 699 F.3d at 234; *Tamarin*, 13 F.3d at 54. The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

In this case, the SEC requested that I rely on its written submissions rather than conduct a hearing on damages. Mot. at 20 (citing *Bray v. Purple Eagle Ent., Inc.*, No. 18-CV-5205, 2024 WL 553961, at *5 (S.D.N.Y. Jan. 3, 2024) (finding that hearing was unnecessary where plaintiff's submissions, with defendants' admissions resulting from their default, were sufficient to evaluate the fairness of plaintiff's damages request). As described below, the SEC's affidavits and documentary evidence are sufficient to support its requested damages award, and therefore no hearing is necessary. *See Sec. & Exch. Comm'n v. Scott*, No. 13-CV-5113, 2015 WL 13742024, at *12 (E.D.N.Y. July 15, 2015).

### IIIA. Defendant Ordered to Disgorge Unlawful Profits

The SEC requests that I hold Mr. Simeon liable for disgorgement with prejudgment interest to be deemed satisfied by the restitution and forfeiture orders entered against him in the parallel Criminal Action. *See* Mot. at 18.

Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) authorize courts to order disgorgement in SEC enforcement actions. 15 U.S.C. §§ 78u(d)(3), 78u(d)(5) & 78u(d)(7). District

courts have "broad equitable power to fashion appropriate remedies for violations of federal securities laws, including ordering that culpable defendants disgorge their profits. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). "Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct. *S.E.C. v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014); *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d at 1474 ("The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains."); *see also S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006) (stating that the purpose of disgorgement is primarily "public protection," and not investor compensation).

To award disgorgement, a district court must first find that investors suffered pecuniary harm. *See S.E.C. v. Govil*, 86 F.4th 89, 98 (2d Cir. 2023). Nevertheless, "disgorgement is 'measured by' the wrongful gain obtained by the defendant rather than by the loss to the investor." *Id.* at 105. "[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. S.E.C.*, 591 U.S. 71, 75 (2020). Disgorgement "need only be a reasonable approximation of profits causally connected to the violation." *S.E.C. v. Ahmed*, 72 F.4th 379, 397 (2d Cir. 2023) (cleaned up). Once the SEC establishes this reasonable approximation, the burden shifts to the defendant to prove a more reasonable figure. *See S.E.C. v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996); *First Jersey Sec.*, 101 F.3d at 1475 ("The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation; any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty.").

The SEC argues that the Complaint establishes the pecuniary harm required under *Govil* for disgorgement. Mot. at 19 (citing *S.E.C. v. iFresh*, No. 22-CV-3200, 2024 WL 416709, at *3– 5 (E.D.N.Y. Feb. 5, 2024) (finding that the pecuniary harm requirement had been satisfied based

on the complaint's allegations of investor losses)). The Complaint alleges that Mr. Simeon engaged in an offering fraud that raised money from investors that he ultimately misappropriated for personal expenses and to make Ponzi-like payments to other investors. *See* Compl. ¶¶ 1–5. Additionally, in the Criminal Action, a restitution order in the amount of $202,415 was entered against Mr. Simeon. *See* Criminal Action, ECF No. 39 at 6. A criminal order of restitution satisfies *Govil*'s required predicate of pecuniary harm. *See S.E.C. v. Oppenheimer*, No. 15-CV-5456, 2024 WL 3342098, at *4 n.2 (S.D.N.Y. July 8, 2024).

In this case, the SEC requests disgorgement in the amount of $247,045, representing Mr. Simeon's profits gained as a result of the fraudulent offer and sale of the securities alleged in the Complaint. *See* Compl. ¶¶ 15–34. Bank Records in the name of Mr. Simeon and FBE obtained by the SEC and provided in support of the SEC's motion confirm the allegations that a total of $439,830 was fraudulently obtained from investors. ECF No. 58-5 ("Hendelman Decl."). The SEC's summary witness declaration and supporting exhibit show that Simeon and FBE received $439,830 from 13 groups of investors between April 2019 through February 2021, and made payments back to these investors totaling $192,785, resulting in a net gain of $247,045. *See* Hendelman Decl. ¶¶ 4, 5, Ex. A.

In connection with their request for disgorgement, the SEC also asks the court to award the prejudgment interest attributable to the Mr. Simeon's unlawful profits. "The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion." *First Jersey*, 101 F.3d at 1476 (quoting *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995)). Factors a court should consider include "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the

statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *First Jersey*, 101 F.3d at 1476. Payment of prejudgment interest "prevents a defendant from obtaining the benefit of 'what amounts to an interest free loan procured as a result of illegal activity.'" *Sec. & Exch. Comm'n v. Rinfret*, No. 19-CV-6037, 2020 WL 6559411, at *6 (S.D.N.Y. Nov. 9, 2020). Where enforcement is brought by a regulatory agency, the remedial purpose of the statute becomes a particularly important factor. *First Jersey*, 101 F.3d at 1476. Indeed, courts routinely grant the SEC prejudgment interest on disgorgement amounts. *See S.E.C. v. Ahmed*, No. 15-CV-675, 2021 WL 2471526, at *6 (D. Conn. June 16, 2021) (collecting cases).

I agree with the SEC's argument that an award of prejudgment interest is warranted. Accepting the SEC's well-pleaded allegations as true, many of the same reasons as above counsel in favor of awarding prejudgment interest—the egregiousness of Mr. Simeon's fraud, how long it lasted, and the means he used to perpetrate it. Indeed, "the Securities and Exchange Acts were designed root out precisely this kind of securities fraud." *Sec. & Exch. Comm'n v. Rinfret*, 2020 WL 6559411, at *6 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) (discussing these statutes' history and purpose); *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 98 (2d Cir. 2017) (same)). To calculate prejudgment interest, I will apply the IRS tax underpayment rate to the disgorgement amount. *See, e.g., Ahmed*, 72 F.4th at 403–04 (affirming award of prejudgment interest based on the IRS underpayment rate). Applying the IRS underpayment rate to the SEC's requested disgorgement amount of $247,045 starting in October 2021, after the Complaint was filed, and through July 31, 2024, when I first authorized the SEC to move for default judgment, results in a prejudgment interest calculation of $45,887.83. *See* Gleich Decl. ¶ 3, Ex. A.

Therefore, I order that Mr. Simeon be required to disgorge $292,932.83, the total of the net

gains from the fraudulent scheme and the prejudgment interest due.

**IIIB. Disgorgement Is Deemed Satisfied by the Restitution Order**

According to the SEC, the disgorgement and prejudgment interest should be deemed satisfied by the forfeiture and restitution orders in the parallel Criminal Action. *See* Mot. at 21. As part of the judgment in the Criminal Action, Simeon was ordered to forfeit $202,415 and pay restitution in the amount of $202,415, representing a combined amount of $404,830. While restitution and forfeiture have distinct obligations, statutory authorizations, and purposes, *see United States v. Bodouva*, 853 F.3d 76 (2d Cir. 2017), equitable principles establish that a wrongdoer should not have to give up his unjust gains twice. *See S.E.C. v. Govil*, 86 F. 4th 89, 94 (2d Cir. 2023) ("A defendant is only required to give back the proceeds of his securities fraud once."); *see also S.E.C. v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 391 (S.D.N.Y. 2010) ("To the extent that [the defendant] has paid or pays the amount owed in restitution, the amount of his disgorgement obligation may be offset accordingly."); *S.E.C. v. Zafar*, No. 06-CV-1578, 2009 WL 129492, at *9 (E.D.N.Y. Jan. 20, 2009) (same). Therefore, while I found above that Mr. Simeon is liable for disgorgement and prejudgment interest, I deem these obligations satisfied by the forfeiture and restitution orders entered against him in the Criminal Action.

**IIIC. Injunctive Relief**

The SEC requests that Mr. Simeon be permanently enjoined from future securities law violations and from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act.

Pursuant to Section 20(b) of the Securities Act ("Section 20(b)"),

Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, the Commission may, in its discretion, bring an action in any district court

of the United States ... to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 77t(b).

Section 21(d) of the Exchange Act ("Section 21(d)"), 15 U.S.C. § 78u(d)(1), and Section 209(d) of the Advisers Act ("Section 209(d)"), 15 U.S.C. § 80b-9(d), grant the Commission the same power to enjoin violations of those Acts. *See S.E.C. v. Landberg*, 836 F. Supp. 2d 148, 158 (S.D.N.Y. 2011). Section 209(d) also empowers the SEC to enjoin aiders and abettors of violations of the Advisers Act. 15 U.S.C. § 80b-9(d).

To obtain a permanent injunction under Section 20(b) or Section 21(d), the SEC need only make "a substantial showing of likelihood of success as to both a current violation and the risk of repetition." *Smith v. S.E.C.*, 653 F.3d 121, 127–28 (2d Cir. 2011) (quoting *Cavanagh*, 155 F.3d at 132); *see S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (holding that a court may issue a permanent injunction on a default judgment "upon a finding of the likelihood that the defendant would commit future violations if not enjoined"); *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated."). The same standard applies to injunctions sought under Section 209(d). *See*, *e.g.*, *Landberg*, 836 F. Supp. 2d at 158; *S.E.C. v. Tandem Mgmt. Inc.*, No. 95-CV-8411, 2001 WL 1488218, at *12 (S.D.N.Y. Nov. 21, 2001).

In addition, courts consider:

(1) the egregiousness of the past violations; (2) the degree of scienter; (3) the isolated or repeated nature of the violations; (4) whether defendant has accepted blame for his conduct; and (5) whether the nature of defendant's occupation makes it likely have he will have opportunities to commit future violations.

*Landberg*, 836 F. Supp. 2d at 158 (citing *Cavanagh*, 155 F.3d at 135); *see S.E.C. v. Verdiramo*, 890 F. Supp. 2d 257, 275 (S.D.N.Y. 2011) (same). Courts consider the totality of the circumstances; "[n]o single factor is determinative." *S.E.C. v. Solucorp Indus., Ltd.*, 197 F. Supp. 2d 4, 12 (S.D.N.Y. 2002) (citation omitted). The SEC need not demonstrate irreparable harm or the unavailability of other remedies at law. *See Smith*, 653 F.3d at 127–28.

The SEC has demonstrated a reasonable likelihood of future violations. Mr. Simeon has previously been found liable for illegal conduct. *See* Compl. ¶ 13; *United States v. Simeon*, 21-CR-479 (E.D.N.Y. Sept. 15, 2021), ECF No. 39. Mr. Simeon's conduct in this case was egregious and made with a high degree of scienter. He repeatedly lied to investors by making false promises of guaranteed returns on their investments; that his investors could receive full refunds of their principal with 30 days' notice; and that their investments would be used for investment purposes. Compl. ¶ 36. Contrary to these representations, Mr. Simeon, at the very least, recklessly disregarded the fact that he was misappropriating these funds for his personal expenses, and to further his fraudulent scheme by making Ponzi-like payments to other investors. *Id.* ¶ 40. His fraudulent misconduct here is not at all an "isolated occurrence" as his misconduct continued for nearly two years. *Id.* ¶ 1. He is also a felon who previously served approximately fifteen months in prison for his role in another fraudulent scheme involving bogus nursing schools in New York City and Long Island. *Id.* ¶ 13. Finally, although Mr. Simeon pleaded guilty in the Criminal Action to the same misconduct alleged in this Civil Action, he recently stated in his letter to the Court, docketed on July 12, 2024, that he "maintain[s] [his] innocence and intend[s] to vigorously defend against the SEC's allegations." ECF No. 34. Accordingly, the reasonable likelihood that Mr. Simeon will commit future violations is very high.

Finally, the balance of the equities favors the SEC because "investors need[ ] the protection of an injunction," especially in light of the likelihood of Mr. Simeon's future fraud violations. *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d at 1102. As noted above, at the time of his fraudulent activities, Mr. Simeon previously served approximately fifteen months in prison for his role in another fraudulent scheme. Compl. ¶ 13. The failure of Mr. Simeon's prior sentence of imprisonment to deter him from committing the fraudulent misconduct here demonstrates the need to protect investors with an injunction. Finally, "[a]s a practical matter, if a plaintiff demonstrates both likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *See S.E.C. v. Chappell*, 107 F.4th 114, 139 (3d Cir. 2024) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). The public interest in enforcing Congress's anti-securities fraud provisions favors enjoining Simeon to protect investors. *See SEC v. Subaye, Inc.*, No. 13-CV-3114, 2014 WL 4652578, at *4 (S.D.N.Y. Sept. 18, 2014) (finding that "the entry of permanent injunctions enjoining [defendant] from future violations of the securities laws . . . is appropriate and would not disserve the public interest"). Based on the likelihood of future violations, I permanently enjoin Mr. Simeon from future violations of Section 17(a), Section 10(b) and Rule 10b-5.

### A. Officer or Director Bar

The SEC also argues that Mr. Simeon should be permanently barred from serving as an officer or director. (Mot. at 21). Section 20(e) of the Securities Act ("Section 20(e)") provides that,

> In any proceeding under subsection (b) of this section, the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 77q(a)(1) of this title from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78l of this title or that is required to file reports pursuant to section 78o(d) of this title if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer.

15 U.S.C. § 77t(e). Section 21(d) of the Exchange Act ("Section 21(d)") similarly allows courts to permanently prohibit a person "who violated section 78j(b) of this title or the rules or regulations thereunder from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78l of this title or that is required to file reports pursuant to section 78o(d) of this title . . . ." 15 U.S.C. § 78u(d)(2).

In assessing whether an individual is unfit to serve as an officer or director, courts may consider: "'(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.'" *S.E.C. v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013) (quoting *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

Based on these factors, Mr. Simeon is unfit to serve as an officer or director of a public company. As discussed above, Mr. Simeon's underlying securities law violation was egregious. He lied to investors repeatedly and misappropriated their investments for his own personal use. He is a felon who committed the underlying misconduct in this civil action after he previously served a term of imprisonment for a separate fraudulent scheme. Mr. Simeon was the sole operator of his wholly owned entity through which he perpetrated his fraudulent scheme. He demonstrated a high degree of scienter by lying to investors repeatedly to con them into trusting him with their money. Given that he is a repeat offender undeterred after serving approximately fifteen months in prison for a separate fraudulent scheme, there is a high likelihood that Mr. Simeon will offend again. Therefore, I permanently enjoin Mr. Simeon from holding an officer or director position.

## CONCLUSION

For the reasons above, I grant the SEC's motion for default judgment in that (1) Mr. Simeon is ordered to disgorge $292,932.83 in ill-gotten gains, and that this disgorgement amount is deemed satisfied by the Restitution Order entered in the parallel Criminal Action of *United States v. Simeon*, No. 1:21-CR-479 (E.D.N.Y.); (2) Mr. Simeon is permanently enjoined from further violating federal securities law and is prohibited from acting as an officer or director of any publicly held company.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: January 9, 2026
      Brooklyn, New York